# IN THE SUPREME COURT OF IOWA

No. 21–0144

Submitted November 16, 2021—Filed April 1, 2022

**STATE OF IOWA,**

Appellee,

vs.

**PETER LEROY VEAL,**

Appellant.

---

Appeal from the Iowa District Court for Cerro Gordo County, Rustin Davenport, Judge.

The defendant appeals the district court's denial on remand of his motion challenging the representativeness of the jury pool under the fair-cross-section requirements under the Sixth Amendment to the United States Constitution. **AFFIRMED.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

David S. Walker, Windsor Heights, and Russell E. Lovell, II, Des Moines, for amicus curiae NAACP.

**McDERMOTT, Justice.**

Peter Veal was charged with committing two murders and attempting to commit a third in Cerro Gordo County. He requested a change of venue because of pretrial publicity, and the court moved his trial to Webster County. The jury found him guilty of two counts of murder in the first degree and one count of attempted murder. Veal, an African-American, appealed his conviction, arguing that his right to an impartial jury under the United States Constitution had been violated because, although his jury pool contained five African-Americans, the jury that decided his case contained none. On appeal, we remanded the case to give Veal an opportunity to develop his impartial-jury arguments in response to refinements that we made to how a defendant must prove a fair-cross-section constitutional violation. The district court ultimately rejected Veal's further-developed claims. Veal now appeals that ruling.

### I. Facts Developed on Remand.

We described the underlying facts from Veal's trial and earlier procedural history of this case in the opinion filed in Veal's initial appeal and will forego restating them here. *See State v. Veal* (*Veal I*), 930 N.W.2d 319, 324–26 (Iowa 2019). Pertinent to this appeal are the facts that the parties developed on remand related to the only remaining issue in the case: Veal's fair-cross-section challenge.

In *State v. Plain* (*Plain II*), we defined the terms "jury pool" (the members of the community selected for jury duty and summoned and reporting to the courthouse), "jury panel" (the members of the pool directed to a particular

courtroom to serve as possible jurors for a specific trial), and "jury" (the members of the panel actually selected for a specific trial), and will use the same definitions in this case. 969 N.W.2d 293, 294–95 (Iowa 2022). "One can think of each of these groups as concentric circles: from the community, we draw the pool; from the pool, we draw the panel; and from the panel, we draw the jury." *Id.*

Veal's pool included 153 potential jurors, of whom 5 were African-American. From this pool was drawn a panel of 34 potential jurors, of whom 3 were African-American. Of the 3 African-Americans, 2 had prior felony convictions. Under Iowa Rule of Criminal Procedure 2.18(5)(*a*) (2017), the State may challenge "for cause" any panel member with a prior felony conviction, and the court must then strike the prospective juror from the panel. (Under a recent amendment to this rule inapplicable to this case, prospective jurors with felonies will not be struck if "it can be established . . . that the juror's rights of citizenship have been restored." Iowa R. Crim. P. 2.18(5)(*a*) (2021).) The State challenged both of these prospective jurors, and the district court removed them from the panel. The State also challenged, and the district court also removed, a white juror with a prior felony conviction from the panel.

The third African-American on the panel was the daughter of a man whom the State's lead attorney had prosecuted successfully for three serious felonies (kidnapping, sexual assault, and murder). The prospective juror acknowledged that she'd attended part of her father's trial. The State exercised a peremptory challenge to remove her from the panel. Unlike challenges for cause, peremptory challenges (sometimes called peremptory "strikes") permit parties to strike

prospective jurors from the panel without the need to state the "cause" or reason. *Compare* Iowa R. Crim. P. 2.18(5) (2017), *with id.* r. 2.18(9). Veal lodged an objection to the State's peremptory strike of this panel member under *Batson v. Kentucky*, which forbids a party from using peremptory strikes to eliminate potential jurors based on their race. *See Batson v. Kentucky*, 476 U.S. 79, 96–98 (1986). The district court overruled Veal's *Batson* challenge, finding that the State had offered "a sufficient nondiscriminatory reason" for striking the panel member, and excused her from the panel. We already affirmed the district court's ruling on this *Batson* challenge in Veal's initial appeal. *Veal I*, 930 N.W.2d at 334.

On remand to address his fair-cross-section challenge, Veal called several witnesses. Todd Nuccio, the state court administrator at the time of the hearing, testified about statewide changes to the jury management practices implemented in December 2018 and aimed in part to address issues raised in our decisions in *Plain I*, *Lilly I*, *Veal I*, and *Williams I*. *See State v. Plain* (*Plain I*), 898 N.W.2d 801, 827–28 (Iowa 2017); *State v. Lilly* (*Lilly I*), 930 N.W.2d 293, 305–07 (Iowa 2019); *Veal I*, 930 N.W.2d at 328–29; *State v. Williams* (*Williams I*), 929 N.W.2d 621, 629–30 (Iowa 2019). The changes included creating uniform jury management practices in summoning prospective jurors, addressing failures to appear or respond, establishing procedures for reminder letters and electronic notifications, implementing electronic (as opposed to paper) juror questionnaires, and publicizing the source list from which courts draw jury pools. Before the changes, it was optional for jurors to identify their race on the

questionnaire; now it's required. Nuccio testified that he lacked sufficient data to say whether the changes had increased representation but that anecdotal information suggested it was improving.

Mark Headlee, the judicial branch's information technology director, testified about the jury management software that courts throughout the state use. He explained that the judicial branch receives voter registration, driver's license, and nonoperator identification lists that are combined (with duplications removed) to form the source list from which people are randomly selected for jury pools. *See* Iowa Code §§ 607A.21–.22.

Grace Zalenski, a private statistical consultant, testified about her analysis of the racial composition of Veal's jury pool and Webster County's historical data for jury pools in the year preceding Veal's trial. She testified that Veal's jury pool had 5 African-Americans out of the 153 potential jurors, equating to 3.27%. She calculated the jury-eligible population of African-Americans in Webster County at the time of trial (subtracting for African-Americans in the Fort Dodge Correctional Facility population) at 3.02%.

Zalenski conducted two separate analyses on Veal's *pool* that adjusted for the African-Americans who were removed from his *panel*. In the first analysis, Zalenski subtracted the two African-Americans removed for having prior felonies from the five in his pool. In the second analysis, Zalenski subtracted three African-Americans (including the panel member excused after the State's peremptory strike) from the five in his pool. Zalenski concluded that both analyses demonstrated an underrepresentation of African-Americans that was

not random. Zalenski also analyzed the representation of Hispanics in Veal's pool and in the county's pools over time using the historical data.

The court also heard testimony from Mary Rose, an associate professor of sociology at the University of Texas at Austin, who described her areas of expertise to include jury decision-making, jury representation, and jury participation. Rose identified several factors based on her research that were associated with the underrepresentation of African-Americans and Hispanics on juries, including laws excluding felons from serving, failing to issue reminders to summoned jurors, and failing to impose consequences for summoned jurors who don't show.

## II. The *Duren/Plain* Elements.

The Sixth Amendment to the United States Constitution guarantees the right to "an impartial jury of the state and district wherein the crime shall have been committed." U.S. Const., amend VI. The Iowa Constitution similarly guarantees the right to a "trial by an impartial jury." Iowa Const. art. I, § 10. The constitutional guarantees of an impartial jury entitle the accused to a jury "drawn from a fair cross-section of the community." *Plain I*, 898 N.W.2d at 821.

A defendant establishes a prima facie violation of the fair-cross-section requirement by showing that (1) a group alleged to have been excluded is a "distinctive" group in the community, (2) the group's representation in jury pools is not "fair and reasonable" when considered against the group's percentage in the community, and (3) the group's underrepresentation "is due to systematic exclusion of the group in the jury-selection process." *Id.* at 822 (quoting *Duren*

*v. Missouri*, 439 U.S. 357, 364 (1979)). The defendant bears the burden of proof to show a prima facie violation of the fair-cross-section requirement. *Plain I*, 898 N.W.2d at 821–22; *Lilly I*, 930 N.W.2d at 299; *see also Duren*, 439 U.S. at 363–64.

The State concedes the first *Duren/Plain* prong and thus that African-Americans constitute a distinctive group in the community. The contest involves the second and third prongs. The district court held that Veal failed to prove either one. We review challenges alleging the denial of constitutional rights—in this case, the right to an impartial jury—de novo and thus evaluate the evidence anew without deferring to the district court's findings. *Plain I*, 898 N.W.2d at 810.

**A. The Scope of the Remand and Our Review on Appeal.** On remand, Veal asked the district court to evaluate his claims under both the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution. In *Veal I*, we held that Veal hadn't raised a claim under the Iowa Constitution in the district court as required before his trial. 930 N.W.2d at 328 n.5. We thus limited our remand to his claims under the Sixth Amendment. *Id.* at 330. The district court on remand determined that Veal hadn't preserved a fair-cross-section challenge under the Iowa Constitution, and that the issue in any event would exceed the scope of the remand, and thus didn't rule on it. Veal concedes in this appeal that error wasn't preserved on a challenge under article I, section 10 of the Iowa Constitution. We thus will

address Veal's claims under the Sixth Amendment to the United States Constitution only.

**B. Veal's Proof of Causation under *Duren/Plain*'s Second Prong.** We will begin our analysis on the second prong. To satisfy this prong, a defendant must offer proof "that the representation of a distinctive group in the jury pool falls below the representation in the eligible juror population." *Veal I*, 930 N.W.2d at 328. In *Lilly I*, we introduced two steps to this analysis. The first step requires the defendant to prove underrepresentation in the defendant's own jury pool by a straightforward comparison of the actual percentage of the distinctive group in the jury pool against the group's percentage in the jury-eligible population. 930 N.W.2d at 305. If the actual percentage exceeds the percentage in the jury-eligible population, then no violation. *Id.* This is because a defendant "whose jury pool has a percentage of the distinctive group at least as large as the percentage of that group in the jury-eligible population has not had his or her right to a fair cross section infringed." *Id.* This initial step acts (as amicus curiae NAACP accurately describes it) in effect as a standing requirement: if the defendant can't establish underrepresentation in the defendant's *own* pool under a direct comparison of percentages, then that defendant's fair-cross-section challenge fails.

If the defendant satisfies this initial step, then the defendant must next show that the percentage of the distinctive group in the defendant's own jury pool or in jury pools over a recent representative period is less than the expected percentage by at least—under the Sixth Amendment—two standard deviations.

*Veal I,* 930 N.W.2d at 328–29 (citing *Castaneda v. Partida,* 430 U.S. 482, 496 n.17 (1977)). Standard deviation analysis, we explained in *Lilly I,* "uses accepted statistical methods to determine the likelihood that a disparity" between the distinctive group's percentage in the pool and in the population "is the result of something *other than* chance." 930 N.W.2d at 300. Historical data from multiple jury pools may be aggregated for this analysis, but the defendant may not selectively limit the historical data by, for example, including some earlier jury pools but excluding other, more recent jury pools. *Id.* In *Duren v. Missouri,* for instance, the defendant's trial began in March 1976, and the analysis focused on the county's historical jury pool data from June–October 1975 and January–March 1976. 439 U.S. at 362–63.

African-Americans comprised 3.27% (5 of 153) of Veal's own pool and 8.82% (3 of 34) of Veal's own panel. We noted in *Veal I* that adjusting the Webster County population to the jury-eligible population by removing the Fort Dodge prison population might actually make Veal's pool over-representative of African-Americans and, if so, would foreclose his fair-cross-section claim. 930 N.W.2d at 329 n.8. Veal's expert calculated the percentage of the jury-eligible African-American population at 3.02%. African-Americans were thus *overrepresented* in his pool and panel. Under this analysis, Veal fails to show any violation under the first step of *Duren/Plain*'s second prong.

Veal argues that permitting for-cause strikes of panel members with prior felony convictions amounts to the systematic exclusion of African-Americans in jury pools. He thus contends that we shouldn't include in calculations of his pool

the two prospective African-American jurors removed from the panel for having prior felony convictions, and similarly shouldn't include the prospective African-American juror excused by the State's peremptory strike. If we didn't include the 3 jurors with prior felonies (2 African-American and 1 white) in the calculation, African-Americans would comprise 2.00% of Veal's jury pool (3 of 150) and 3.23% of his panel (1 of 31). And if we also removed from the calculation the African-American juror excused by peremptory strike, African-Americans would comprise 1.34% of Veal's pool (2 of 149) and 0% of his panel (0 of 30).

But the United States Supreme Court has already foreclosed this type of challenge to strikes of individual panel members under the Sixth Amendment. In *Holland v. Illinois*, the Court noted that the Sixth Amendment's fair-cross-section requirement "is derived from the traditional understanding of how an 'impartial jury' is assembled." 493 U.S. 474, 480 (1990). This "includes a representative venire, so that the jury will be, as we have said, 'drawn *from* a fair cross section of the community.'" *Id.* (quoting *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975)). But the fair-cross-section requirement, the Court continued, "has never included the notion that, in the process of drawing the jury, that initial representativeness cannot be diminished by allowing both the accused and the State to eliminate persons thought to be inclined against their interests." *Id.* The Court in *Holland* thus declined to extend the Sixth Amendment right even to peremptory strikes—let alone for-cause challenges—since the fair-cross-section requirement assures "not a *representative* jury (which the Constitution does not demand), but an *impartial* one (which it does)." *Id.* Indeed, the Court noted it has

gone out of its way to make this point: "We have never invoked the fair-cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large." *Id.* at 482–83 (quoting *Lockhart v. McCree*, 476 U.S. 162, 173 (1986)). We don't foreclose the possibility of other challenges to the use of a felony disqualification rule. *See, e.g., Batson*, 476 U.S. at 96–98; *Castaneda*, 430 U.S. at 494–95; *Plain I*, 898 N.W.2d at 823 n.9. We simply hold that where it doesn't affect the jurors who are summoned and appear for juror duty, it doesn't implicate the fair-cross-section requirement under the Sixth Amendment.

Veal's particular claim about for-cause challenges of prospective jurors with felony convictions suffers from a further defect. Veal mistakenly claims that people with felony convictions are "jury ineligible" and, thus, should be excluded when calculating statistics about the pool. It's true that *if* a party challenges a prospective juror on the panel having a prior felony, the court must grant the challenge. Iowa R. Crim. P. 2.18(5)(*a*). But prospective jurors with felony convictions may—and indeed, do—serve on juries if no party challenges them. The rule states that challenges for cause "*may* be made by the state or defendant." *Id.* (emphasis added). Nothing requires a party to make such a challenge. The two African-American jurors and one white juror with prior felonies in Veal's pool could have served on the jury had the State not made a challenge to remove them during voir dire. They thus were never "jury ineligible," making their inclusion when calculating percentages of the pool and panel

appropriate. A rule that automatically excluded felons upon appearing for jury service, without any requirement of a for-cause challenge by the State or other action by the court, isn't before us.

Under *Duren/Plain*'s second prong, the defendant is required to prove that the distinctive group's representation in his jury pool is not "fair and reasonable" when considered against the group's percentage in the community. *Lilly I*, 930 N.W.2d at 302. As we stated in *Veal I*, there would be no need to examine aggregate historical data from other jury pools if Veal couldn't first establish on remand any underrepresentation in his own pool. 930 N.W.2d at 329–30 n.8. The evidence showed that Veal's own pool and panel contained a percentage of African-Americans that exceeded their percentage in Webster County's jury-eligible population, and there is no basis under the Sixth Amendment to adjust any calculations as Veal requests based on the for-cause challenges during voir dire. Having a fair cross section of the population in a defendant's pool, as the district court noted, doesn't guarantee a racially representative jury. "Defendants are not entitled to a *jury* of any particular composition." *Taylor*, 419 U.S. at 538 (emphasis added).

Veal thus has failed to show that his right to a fair cross section has been infringed under the Sixth Amendment. Because Veal hasn't delivered on his burden under the second prong, which on its own is sufficient to affirm the district court's denial of his claim, we need not take up his arguments relating to the third prong's requirement to establish that the underrepresentation results from systematic exclusion of the group in the jury-selection process.

**C. Veal's Claim of Underrepresentation of Hispanics.** On remand, Veal also asked the district court to rule on a separate challenge about alleged underrepresentation and exclusion of Hispanics. The district court ruled that Veal failed to preserve error on this claim before his trial and, in any event, such a challenge was beyond the scope of our court's remand order.

Veal argues that he preserved error on a claim that Hispanics were underrepresented when his lawyer objected to his first all-white jury pool, stating: "[W]e are concerned about the racial composition of the jury panel. It includes *no minorities* that we can determine, and I believe that it violates Defendant's Sixth Amendment right to a fair trial." (Emphasis added.) After the district court added another batch of summoned jurors to his pool (bringing the number of prospective jurors to 153), Veal's lawyer objected to this pool, stating: "[I]t seems to me that we are showing that there is a systematic exclusion of minorities, particularly African-American, in the pools over a period of time, as required by *Duren* and further mandated by *Plain.*" Finally, Veal presented evidence during his objection to the pool that over the past six months there were only 35 African-American, 20 Native American, 40 Hispanic, and 24 "Other" prospective jurors summoned for jury duty.

Veal argues that his reference to "minorities" preserved a claim that included the underrepresentation of Hispanics. While he acknowledges that he focused primarily on the exclusion of African-Americans, Veal argues that his mention of Hispanics suffices to preserve error. Veal also argues that the remand

order wasn't specific to African-Americans and thus supports his argument that he is allowed to raise a claim about the exclusion of Hispanics on remand.

But the district court, in ruling on Veal's initial challenge to his jury pool, never addressed any claim about Hispanic underrepresentation on Veal's jury. The ruling is brimming with references to arguments about African-American underrepresentation but silent about any claims involving Hispanics. Veal's motion for new trial and in arrest of judgment that followed the district court's ruling never mentioned the exclusion of Hispanics either; it, like the court's ruling, focused exclusively on African-Americans. So while Veal mentioned "minorities" and mentioned "Hispanics" one time each, the district court never decided any Hispanic underrepresentation issue and Veal never pursued a posttrial motion asking the court to rule on such a claim.

What's more, a reference to "all minorities" hardly seems sufficient to identify a "distinctive" group in the community under the *Duren*/*Plain* analysis. *See Duren*, 439 U.S. at 364. Mentioning "all minorities" and then focusing exclusively on African-Americans fails to put the State on notice of a challenge based on the exclusion of Hispanic jurors. And Veal's written submission on prior jury pools only provided a census figure for African-Americans, suggesting again that his Sixth Amendment claim implicated only the exclusion of African-Americans.

When the district court doesn't decide an issue presented to it and a party fails to file a posttrial motion requesting a ruling on the issue, the party fails to preserve error. *Fennelly v. A-1 Mach. & Tool Co.*, 728 N.W.2d 163, 177 (Iowa

2006). The district court in the initial proceedings never ruled on a claim alleging underrepresentation of a group other than African-Americans, and our opinion in *Veal I* similarly mentioned only African-Americans. We find no error in the district court's holding that Veal failed to preserve error on a claim of Hispanic underrepresentation.

**III. Conclusion.**

In *Veal I,* we conditionally affirmed Veal's conviction and remanded for a determination on his fair-cross-section challenge. We now affirm the district court's holding on remand that Veal failed to prove a violation of his Sixth Amendment right to an impartial jury and affirm his conviction.

**AFFIRMED.**